UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                          :
JACQUELINE CAMERON, et al.,                               :
                                                          :
                              Plaintiffs,                 :
                                                          :          25-CV-00210 (JAV)
         -v-                                              :
                                                          :          OPINION AND ORDER
MARGARET WINTER,                                          :
                                                          :
                              Defendant.                  :
                                                          :
-------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

        Before the Court is Defendant Margaret Winter's motion to dismiss this

action.  ECF No. 12 ("Motion" or Mot.").  For the following reasons, the Motion is

**GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

        The following facts are accepted as true and construed in the light most

favorable to the Plaintiff for the purposes of this motion.  *Xeriant, Inc. v. Auctus

Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

        AYR, Inc. ("AYR" or "the Company") is a clothing company established in

New York City in 2012 as a subsidiary of Bonobos, Inc. ("Bonobos").  ECF No. 1-1

("Compl."), ¶ 10.  Plaintiff Cameron ("Cameron") was AYR's Creative Director for

eight years, and Plaintiff Reich ("Reich) was its President for four years.  *Id.*  Both

Cameron and Reich ("Plaintiffs") are co-founders of the Company.  *Id.*, ¶ 1.  Winter

is also a co-founder of AYR and retains her role as its original Chief Executive

Officer ("CEO").  *Id.*, ¶¶ 7, 10.

In 2016, AYR restructured to raise capital and attract new investors after its spinoff from Bonobos.  *Id.*, ¶ 12.  In doing so, the Company altered its corporate documents and divided its stock into Common shares and Series A Preferred shares.  *Id.*  All stockholders of both types signed an Investors' Rights Agreement, which dubbed the five Common stockholders "Key Holders" who held additional rights not granted to Preferred stockholders.  *Id.*  At that time, only the Key Holders held Common stock.  These five Key Holders included Bonobos (2,500,000 Common shares), Winter (2,132,000 Common shares), Reich (1,804,000 Common shares), Cameron (1,640,000 Common shares), and AYR's final co-founder Max Bonbrest (984,000 Common shares).  *Id.*, ¶ 13.  By these numbers, Winter and Bonobos together owned just over 51% of all Common shares.

During this restructuring, stockholders also entered a Voting Agreement.  *Id.*, ¶ 14; *see id.*, Ex. 1 ("Voting Agreement" or "Voting Agr.").  The Voting Agreement gave Preferred stockholders the right to appoint one member to the company's five-person board, whereas it gave "the holders of a majority of the then-outstanding Shares of Common Stock" (at that time, only Key Holders) rights to vote on the remaining four.  Voting Agr., §§ 1.2(a), 1.2(b).  Initially, Reich and Winter were two of the latter four board members.  *Id.*, § 1.2(b).

Section 7.8 ("Consent Required to Amend, Terminate or Waive") dictates the terms under which any provision of the Voting Agreement could be amended, terminated, or waived:

> This Agreement may be amended or terminated and the observance of
> any term hereof may be waived (either generally or in a particular

2

instance and either retroactively or prospectively) only by a written instrument executed by (a) the Company; (b) the Key Holders holding a majority of the Shares then held by the Key Holders, who are then providing services to the Company as officers, employees or consultants; and (c) the holders of a majority of the shares of Common Stock issued or issuable upon conversion of the shares of Series A Preferred Stock held by the Investors (voting as a single class and on an as-converted basis). Notwithstanding the foregoing:

> (a) this Agreement may not be amended or terminated and the observance of any term of this Agreement may not be waived with respect to any Investor or Key Holder without the written consent of such Investor or Key Holder unless such amendment, termination or waiver applies to all Investors or Key Holders, as the case may be, in the same fashion . . .

*Id.*, §§ 7.8, 7.8(a).

Although Winter is currently the only Key Holder working for AYR, Compl., ¶¶ 2, 7, all four co-founders were AYR employees ("Working Key Holders") at the time the Voting Agreement was executed in 2016, *id.*, ¶ 17.  Accordingly, any amendment, termination, or waiver to the Voting Agreement provisions initially required the consent of the Company, enough Working Key Holders to represent a majority of that group's shares, and holders of a majority of Common shares issued or issuable upon conversion of the Preferred shares.

On August 5, 2024, Winter—as the sole Working Key Holder by that time and CEO of the Company—and Bonobos, collectively owning just over 51% of all Common shares, passed the "Action by Written Consent of the Stockholders of AYR" ("Written Consent").  Compl., ¶¶ 1, 35.  The Written Consent amended the Voting Agreement to rescind all Non-Working Key Holders' rights to appoint members to AYR's board, effectively giving Winter the exclusive right to appoint the three Key

Holder-appointed members, as she occupied the fourth Key Holder-appointed seat under the original Voting Agreement.  *Id.*, ¶ 36; *see id.*, Ex. 2 ("Written Consent"). Bonobos and Winter did not provide notice to or seek written consent from the three Non-Working Key Holders in doing so.  Compl., ¶ 37.  The following day, AYR redeemed and retired all of Bonobos' Common shares.  *Id.*, ¶ 33.  Winter notified Plaintiffs of the change on September 11, 2024, over a month later.  *Id.*, ¶ 41.

In conjunction with the Bonobos sale, certain Preferred stockholders sold 1,346,848 shares at $0.40 per share by exercising their co-sale rights.  *Id.*, ¶ 45. This fact was not disclosed in the Company's September 11th notice to Plaintiffs but was only discovered when Reich conducted a search for the Company's most recent Cap Table through Carta, the online Cap Table management system used by AYR. *Id.*

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party.  *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [the standard] requires more than labels[,] conclusions, and a

4

formulaic recitation of a cause of action's elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

## DISCUSSION

Plaintiffs allege that Defendant passed the Written Consent in violation of Section 7.8(a) of the Voting Agreement because she did not seek their approval for changes that do not impact all Key Holders "in the same fashion." Compl., ¶¶ 36, 39-40. Plaintiffs bring a breach of fiduciary duty claim, declaratory judgment claim, and breach of contract claim. *Id.*, ¶¶ 48-60. The Court addresses each in turn.

### A.    Fiduciary Duty Claim

Plaintiffs claim that Defendant breached her fiduciary duty to the Company and its stockholders by devaluing the Company and Plaintiffs' shares in it, tarnishing the Company's and founders' reputations, and devaluing Plaintiffs' investment. Compl., ¶ 56. Defendant argues that Plaintiffs brought this claim in the wrong jurisdiction and that they fail to state a claim upon which relief can be granted. ECF No. 13 ("Mem.") at 9. Because the Court agrees that the breach of fiduciary claim properly belongs in the Delaware Court of Chancery, it does not reach the arguments regarding the sufficiency of the Complaint as to this claim.

At issue is whether Plaintiffs' claim for breach of fiduciary duty should be dismissed under the doctrine of *forum non conveniens* because AYR's Charter dictates that it must be brought in the Delaware Court of Chancery. *Id.* at 9-10. In support of this argument, Defendant provides the Court with AYR's Charter. ECF No. 14-1 ("AYR Charter").

"In determining the sufficiency of a claim under Rule 12(b)(6), the court may review only the complaint, documents attached to the complaint or incorporated into it by reference, and documents 'integral' to the plaintiff's allegations, even if not explicitly incorporated by reference." *Caviar Biotec Ltd. v. La Prairie, Inc.*, No. 25-CV-1707 (LAP), 2026 WL 591749, at *4 (S.D.N.Y. Mar. 3, 2026) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). "[I]n determining *forum non conveniens* motions," however, considering "the pleadings, affidavits[,] and briefs of the parties" is "a practice long recognized as acceptable and followed from time immemorial in the busy Southern District of New York." *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir. 1980) (en banc); *see also Miller-Rich v. Altum Pharms. Inc.*, No. 22-CV-3473 (JLR), 2023 WL 8187875, at *1 n.1 (S.D.N.Y. Nov. 27, 2023) (relying on affidavits and attached exhibits submitted by the parties to decide *forum non conveniens* motion). Accordingly, the Court considers the Charter in evaluating Defendant's motion to dismiss the fiduciary duty claim.

"Where the parties have contractually selected a forum . . . the forum selection clause substantially modifies the *forum non conveniens* doctrine" by

replacing "the usual tilt in favor of the plaintiff's choice of forum" with a "presumption in favor of the contractually selected forum." *Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023). The Court applies a four-part framework in such cases, assessing:

> (1) whether the clause was reasonably communicated to the party resisting enforcement, (2) whether the clause is mandatory, that is, whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so, and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the answer to all three questions is yes, the clause is presumptively enforceable. At the fourth step, the court asks (4) whether the resisting party has rebutted that presumption by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Id.* (cleaned up). Plaintiffs do not contest prongs one or two, that the forum-selection clause was both communicated to them and mandatory—only prong three, the application of the clause to their fiduciary duty claim. ECF No. 17 ("Opp'n Mem.") at 7-9.

Plaintiffs argue that the Southern District is a proper venue for this claim because the Voting Agreement binds all parties to "irrevocably and unconditionally submit to the jurisdiction of the state courts of New York located in the borough of Manhattan" and the "United States District Court for the Southern District of New York for the purpose of any suit, action or other proceeding arising out of or based upon" the Voting Agreement." *Id.* (quoting Voting Agr., § 7.16). Ultimately, this is where the parties' arguments diverge: Plaintiffs allege their breach of fiduciary claim "aris[es] out of" or is "based upon" the Voting Agreement because "Plaintiffs

are not suing Winter in her capacity as a 'director, officer[,] or other employee of the

Corporation,'" but rather in her capacity as a "stockholder and [a] signatory to the

Voting Agreement." *Id.* at 8, 9.

> The plain language of the AYR Charter, however, dictates that:
>
> the Court of Chancery in the State of Delaware shall be the sole
> and exclusive forum for any stockholder (including a beneficial
> owner) to bring any action asserting a claim of breach of
> fiduciary duty owed by any director, officer[,] or other employee
> of the Corporation to the Corporation or the Corporation's
> stockholders.

AYR Charter at 18) (ellipses omitted).  No interpretation of Plaintiffs' claim that

Defendant breached her "fiduciary duty to the Company and its stockholders,"

Compl., ¶ 54, is extricable from the Court of Chancery's "sole and exclusive"

jurisdiction over fiduciary duty claims brought by AYR stockholders regarding the

"fiduciary duty owed by any director, officer[,] or other employee of the Corporation

to the Corporation or the Corporation's stockholders," AYR Charter at 18.  While

Plaintiffs may maintain that that they "are suing Winter as [a] stockholder and [a]

signatory to the Voting Agreement" rather than "in her capacity as a 'director,

officer[,] or other employee of the Corporation,'" Opp'n Mem. at 9, the language of

their fiduciary duty claim—which is nearly identical to that of the mandatory forum

selection clause—declares otherwise.

As the AYR Charter's forum selection clause is thus "presumptively

enforceable" and Plaintiff does not attempt to show that its enforcement "would be

unreasonable or unjust, or that the clause was invalid for such reasons as fraud or

overreaching," *Rabinowitz*, 75 F.4th at 81 (cleaned up), the Court dismisses

8

Plaintiffs' breach of fiduciary duty claim under the doctrine of *forum non conveniens*.

**B.      Breach of Contract Claim**

The crux of Plaintiffs' breach of contract claim is whether the Written Consent "applies to all . . . Key Holders . . . in the same fashion."  Voting Agr., § 7.8(a); *see also* Voting Agr., § 7.8(b) (providing that Key Holder consent is not required where "amendment or waiver either (A) is not directly applicable to the rights of the Key Holders hereunder; or (B) does not adversely affect the rights of the Key Holders in a manner that is different than the effect on the rights of the other parties hereto").  Defendant contends that the Written Consent "applies equally to all Key Holders who also hold Common stock: if any Key Holder is not providing services to the Company, he or she cannot designate directors."  ECF No. 20 ("Reply") at 6; Mem. at 4, 14-15.  Plaintiffs, however, contend that the Written Consent applies *unequally* to different Key Holders by retaining board-designation rights only for some Key Holders—namely, only Defendant, as the only Working Key Holder.  *See* Compl., ¶ 36.

To decide this motion, the Court must look to Delaware Law.  Voting Agr., § 7.4.  When deciding a motion to dismiss a breach of contact claim involving questions of contract interpretation, "the Court may not choose between two opposing interpretations if both interpretations are reasonable."  *MCG Cap. Corp. v. Maginn*, No. 4521-CC, 2010 WL 1782271, at *8 (Del. Ch. May 5, 2010).  The Court may only dismiss the claim "if defendant['s] interpretation is the *only* reasonable

9

interpretation." *Id.* (emphasis in original). "The proper application of ambiguous contract provisions is a question of fact that cannot be determined on a motion to dismiss." *Id.*

Plaintiffs' interpretation of the contractual language is reasonable. By altering the voting rights of some Key Holders but not others, one could reasonably find that the Written Consent did not "appl[y] to all . . . Key Holders . . . in the same fashion." Voting Agr., § 7.8(a). Accordingly, Plaintiffs sufficiently state a claim upon which relief can be granted, and the breach of contract claim survives.

## C.   Declaratory Judgment Claim

Plaintiffs seek a judgment from the Court declaring that the amendment to the Voting Agreement enacted through the Written Consent is invalid and should be reversed because it constituted a breach of Section 7.8(a). *See* Compl., ¶¶ 39, 48-51. Defendant argues that this claim should be dismissed because it is duplicative of the breach of contract claim. Mem. at 15-16.

The Declaratory Judgment Act provides that federal courts "*may* declare the rights and other legal relations of an[] interested party seeking such declaration" in "a case of actual controversy." 28 U.S.C. § 2201(a) (emphasis added). Prior to its decision in *Admiral Ins. Co. v. Niagara Transformer Corp.* in 2023, the Second Circuit "ha[d] consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." 57 F.4th 85, 96 (2d Cir. 2023) (citation omitted). The Court of Appeals acknowledged, however, that its

10

jurisprudence as to the extent of such discretion became "less than a model of clarity" after the Supreme Court's decision in *Wilton v. Seven Falls Co.  Id.* at 97 (citing 515 U.S. 277, 287 (1995)).  The Circuit thus clarified that "even in circumstances when a declaratory judgment would serve a useful purpose in clarifying and settling the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding, district courts retain broad discretion to decline jurisdiction under the DJA." *Id.* at 99 (cleaned up).  "To the extent they are relevant in a particular case," the Court highlighted six factors to consider:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved;
>
> (2) whether such a judgment would finalize the controversy and offer relief from uncertainty;
>
> (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata;
>
> (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court;
>
> (5) whether there is a better or more effective remedy; and
>
> (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Id.* at 99-100 (cleaned up).

"Courts routinely reject declaratory judgment claims when other claims in the suit will resolve the same issues, as a declaratory judgment in such cases serves no useful purpose." *CVS Albany, LLC v. 1688 Rojav Realty, LLC*, No. 24-CV-7145

(LTS), 2025 WL 2614077, at *3 (S.D.N.Y. Sept. 10, 2025) (cleaned up); *see also Optanix, Inc. v. Alorica Inc.*, No. 20-CV-9660 (GHW), 2021 WL 2810060, at *3-4 (S.D.N.Y. July 6, 2021) (dismissing a declaratory judgment claim where it was duplicative of the relief sought under a breach of contract claim).  If, however, a claim for declaratory judgment "seeks distinct relief from a breach of contract claim, then notwithstanding some overlap between the two claims, it is not duplicative." *Pers. Watercraft Prod. SARL v. Robinson*, No. 16-CV-9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (cleaned up).

While the legal issues here are identical, Plaintiffs contend that the potential relief that could be obtained from the requested declaration that the Written Consent should be set aside is not.  *See* Opp'n Mem. at 18-19.  Specifically, Plaintiffs insist that success on their breach of contract claim cannot offer complete relief because "Plaintiffs' breach of contract claim will only provide [them] with monetary relief for any losses Winter's stripping of their voting rights may have caused—it will not return those rights to them." *Id.* at 18.

In rebuttal, Defendant cites *U.S. Bank Nat. Ass'n ex rel Lima Acquisition LP v. PHL Variable Ins. Co.* for its proposition that declaratory relief's ability to address "future circumstances does not automatically render adjudication of the claim appropriate."  Reply at 8-9 (quoting No. 12-CV-6811 (CM) (JCF), 2014 WL 998358, at *9 (S.D.N.Y. Mar. 14, 2014).  In that case, however, the relief sought addressed resolution of a hypothetical issue, meaning any additional "relief from uncertainty" was purely conjecture.  2014 WL 998358, at *9.  In contrast, if

Plaintiffs' interpretation of section 7.8(a) of the Voting Agreement is deemed correct, their requested declaratory relief would have tangible present consequences by declaring that their rights under the Voting Agreement should be restored, unless and until proper procedures are followed to strip them of those rights again. This impact also establishes that damages would not be a wholly effective alternative remedy for Plaintiffs' declaratory judgment claim, per *Admiral* factor five.

Weighing the *Admiral* factors, the Court thus declines to exercise its discretion to dismiss Plaintiffs' declaratory judgment claim.

## CONCLUSION

Accordingly, Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' breach of fiduciary duty claim is dismissed.  Their breach of contract and declaratory judgment claims survive.  The Clerk of the Court is directed to terminate ECF No. 12.

The parties are ordered to submit a proposed revised case management plan, setting forth a schedule for expert discovery, by March 31, 2026.

SO ORDERED.

Dated:  March 11, 2026
    New York, New York
                                JEANNETTE A. VARGAS
                              United States District Judge